

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*86 Chambers Street*
*New York, New York 10007*

May 29, 2015

By ECF and Hand Delivery
Honorable William H. Pauley III
United States District Judge
500 Pearl Street
New York, New York 10007

    Re:    *Ganek v. Leibowitz, et al.*, 15 Civ. 1446 (WHP)

Dear Judge Pauley:

    This Office represents the Defendants in the above-referenced lawsuit filed by Plaintiff David Ganek ("Plaintiff"), pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). We write respectfully to request a pre-motion conference to address Defendants' anticipated motion to dismiss the complaint.

    Plaintiff seeks to hold 15 law enforcement officers personally liable for hundreds of millions of dollars for doing their jobs in investigating potential insider trading at, and securing and executing a search warrant for, the offices of Level Global Investors ("Level Global"). The complaint's selective presentation of the circumstances surrounding the November 22, 2010, search mischaracterizes or ignores the Government's broader investigation, the culpability of Plaintiff's former Level Global colleagues, the purpose of a search warrant, and Plaintiff's own role in the conduct at issue. Plaintiff's misleading and implausible allegations fail to state a constitutional claim, and the Defendants are entitled to qualified immunity, a doctrine created to protect law enforcement officers from having to defend against precisely this type of litigation.

**I.    Background**

    Since at least 2009, the FBI was investigating potential insider trading violations involving, among others, third-party consultants hired by money managers, such as hedge funds. Affidavit in Support of Search Warrant ("Aff.") ¶ 5 (Aff. quoted in Compl. ¶ 85 & n.1). As part of this wide-ranging investigation, the FBI intercepted wire communications appearing to implicate Level Global's co-founder, Anthony Chiasson, and other Level Global employees, including Spyridon ("Sam") Adondakis, in the receipt of improper inside information from sources inside publicly traded companies. *Id.* ¶¶ 8-10. Building on this foundation, FBI agents approached Adondakis in October 2010 and secured his agreement to cooperate. *Id.* ¶ 11. Adondakis met with certain of the FBI and AUSA defendants on November 2, 2010. Compl. ¶ 68.

    Subsequently, the Government sought and obtained the Level Global warrant, in part because a confidential source within a hedge fund informed the FBI that he had been directed to discard evidence of illegal insider trading. Aff. ¶ 17. The Level Global warrant was designed to locate evidence of a crime; the warrant application explained that the Government had received information that Plaintiff and others at Level Global were active participants in the conduct under

investigation, which supplied probable cause to believe that the proposed search would reveal such evidence. *See* Aff. ¶¶ 11, 13(c), 13(e), 18. The application sought permission to search the offices and/or electronic devices of, among others, Chiasson, Adondakis, and Plaintiff, and to copy Level Global's computer servers. *Id.* ¶¶ 1, 22. The Level Global warrant was executed on November 22, 2010; warrants also were executed that day at two other hedge funds. *See* Compl. ¶ 92.

After further investigation, Chiasson was indicted on February 7, 2012, and was convicted after trial on December 17, 2012, of one count of conspiracy to commit securities fraud and five counts of securities fraud.[1] During the trial, the Honorable Richard J. Sullivan ruled, after briefing and argument, that Plaintiff was sufficiently aware of certain inside information at issue in the trial that he was an unindicted co-conspirator for purposes of Rule 801(d)(2)(E) of the Federal Rules of Evidence. Tr. 3254-57 (Tr. quoted in Compl. ¶¶ 142-44). While Plaintiff himself was never indicted, the notion that he was entirely disconnected from the alleged illegal activities taking place at Level Global is belied by the very trial transcript on which he relies in the complaint.

**II.     The Complaint Should Be Dismissed in Its Entirety**

The gravamen of the complaint is that Defendants violated Plaintiff's Fourth and Fifth Amendment rights by supposedly "fabricating" evidence to obtain the warrant to search the offices of Level Global. These claims are predicated on a purported inconsistency between the warrant application and testimony at the Chiasson trial about what Plaintiff knew about the source of improper inside information from Dell, Inc. To successfully challenge the issuance of a warrant, a "plaintiff must make a 'substantial preliminary showing' [1] that the affiant knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit and [2] that the allegedly false statement was 'necessary to the finding of probable cause.'" *Golino v. New Haven*, 950 F.2d 864, 870-71 (2d Cir. 1991) (quoting *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)). The allegations in the complaint fail to make either showing.

As to the first required showing, Plaintiff does not plausibly allege that the search warrant affidavit contained a false statement. Contrary to the core premise of the complaint, the search warrant affidavit does not state that Adondakis told Plaintiff about the source of the improper inside information from Dell. *See* Compl. ¶¶ 142-44. Rather, the affidavit states—far more generally, and with no reference at all to Dell—that Adondakis obtained "Inside Information" from and about public companies, provided the "Inside Information" and the sources of that information to Plaintiff and others, and that Plaintiff and others executed trades based on the Inside Information. *See* Aff. ¶ 13(c). The term "Inside Information" is defined as "material, nonpublic information regarding certain *public companies*"—it is not limited to information about Dell. *See id.* ¶ 3 (emphasis added). Indeed, the affidavit refers to multiple different public companies about which Adondakis allegedly received material non-public information. *See id.* ¶¶ 8(a), 8(c), 8(d). Therefore, the only alleged falsity described in the complaint—that Adondakis said he told Plaintiff the source of the inside information about Dell, *see* Compl. ¶ 85— is not even contained in the search warrant affidavit; Plaintiff manufactures this "statement" based on an unduly restrictive interpretation of the affidavit language.

---

[1] Chiasson's conviction later was reversed on legal grounds unrelated to the search warrant. *See United States v. Newman*, 773 F.3d 438, 450-51 (2d Cir. 2014). The *Newman* decision is irrelevant for purposes of evaluating the actions of Defendants here.

   Even if Plaintiff could point to an arguably false statement in the affidavit, however, the allegation that certain defendants conspired to "fabricate" evidence about what Adondakis said at the meeting is entirely implausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (to survive a motion to dismiss under Rule 12(b)(6), complaint must state a "plausible claim for relief"). The complaint notes that Adondakis and Agent Makol testified at the Chiasson trial that Adondakis said at the November 2, 2010, meeting that he told Chiasson and another Level Global employee, but not Plaintiff, about the source of the Dell information. Compl. ¶¶ 142-44 (quoting trial testimony). But as Agent Makol later testified, the contemporaneously recorded notes of the November 2, 2010, meeting "reflect that Adondakis said that both Ganek and Anthony [Chiasson]" were "interested in Dell because of contacts," and that Ganek "knew about contacts at Dell." Tr. 3504-05. Thus, even if Adondakis and Makol's recollections of what Adondakis said at the meeting were correct, these notes reflect that other attendees had a different understanding of what Adondakis said. This "obvious alternative explanation" renders Plaintiff's claim of fabrication implausible, *Iqbal*, 556 U.S. at 682, and also confirms that Plaintiff's claims are barred by the doctrine of qualified immunity, *see DiStiso v. Cook*, 691 F.3d 226, 240 (2d Cir. 2012) (doctrine "affords government officials 'breathing room' to make reasonable—even if sometimes mistaken—decisions" (citation omitted)).

   As to the second required showing, the allegedly false statement in the affidavit was not necessary to the finding of probable cause. Setting aside references to Plaintiff's alleged knowledge of the sources of "Inside Information," the remaining portions of the affidavit independently support a finding of probable cause to search Level Global's offices, including Plaintiff's office and electronic devices, for evidence of criminal activity, whether by Plaintiff or other Level Global employees. *See Magnotti v. Kuntz*, 918 F.2d 364, 368 (2d Cir. 1990) ("qualified immunity is appropriate if the affidavit accompanying the warrant is sufficient, after correcting for material misstatements or omissions, to support a reasonable officer's belief that probable cause existed").

   These deficiencies also dispose of Plaintiff's claims for failure to intercede and supervisory liability, because those claims cannot survive absent an underlying constitutional violation. Those two claims are further subject to dismissal on the additional, independent ground that they fail to meet basic pleading standards and are impermissibly premised on a *respondeat superior* theory that cannot support a *Bivens* claim. *See Iqbal*, 556 U.S. at 676. The complaint fails to allege facts indicating that the supervisory defendants were personally involved in the alleged violation of any constitutional right, relying only on bare and conclusory, and therefore legally insufficient, allegations that the supervisory defendants knew or should have known about the supposed fabrication of evidence. *See id.* at 676-77, 680-81. Moreover, to the extent Plaintiff alleges that the U.S. Attorney or any other defendant had a duty to intercede by issuing a public statement, in the midst of an ongoing investigation, exonerating Plaintiff of any wrongdoing, Plaintiff had no constitutional right to such a statement, let alone a clearly established constitutional right. Indeed, given Plaintiff's role in the conduct then under investigation, it would have been irresponsible to issue such a public statement.

   For all of these reasons, and additional reasons that will be set forth in Defendants' motion papers, including with regard to legal deficiencies in the Fifth Amendment claim, the complaint should be dismissed in its entirety.

   We thank the Court for its consideration of and attention to this matter.

                          Respectfully submitted,

                          DANIEL L. STEIN
                          Acting United States Attorney for the
                          Southern District of New York

By:    */s/ Andrew E. Krause*
            ANDREW E. KRAUSE
            SARAH S. NORMAND
            Assistant United States Attorneys
            Telephone:  (212) 637-2769/2709
            Facsimile:  (212) 637-2786
            E-mail:    andrew.krause@usdoj.gov
                          sarah.normand@usdoj.gov

cc:      All counsel of record via ECF