F6mdganc

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  DAVID GANEK,

4                  Plaintiff,                New York, N.Y.

5           v.                               15 Civ. 1446 (WHP)

6  DAVID LEIBOWITZ,

7                  Defendant.

8  ------------------------------x

9                                           June 22, 2015
                                            11:03 a.m.
10

   Before:
11
                    HON. WILLIAM H. PAULEY III,
12
                                            District Judge
13
                        APPEARANCES
14
   NEUFELD SCHECK & BRUSTIN, LLP
15      Attorneys for Plaintiff
   BY:  NANCY GERTNER
16      ANNA BENVENUTTI HOFFMANN
        NICK J. BRUSTIN
17      BARRY SCHECK
        FARHANG HEYDARI
18
   PREET BHARARA
19      United States Attorney for the
        Southern District of New York
20      Attorney for defendants
   BY:  ANDREW E. KRAUSE
21      SARAH SHEIVE NORMAND
            Assistant United States Attorneys
22

23

24

25

F6mdganc

1          THE CLERK:  Matter on for initial conference and

2     premotion conference, Ganek v. Leibowitz.

3          Will counsel for the plaintiff please state their

4     appearances for the record.

5          MS. GERTNER:  Nancy Gertner for David Ganek.

6          MS. HOFFMANN:  Anna Benvenutti Hoffmann also for

7     plaintiff David Ganek.

8          MR. BRUSTIN:  Nick Brustin also for plaintiff Ganek.

9          MR. SCHECK:  Barry Scheck for David Ganek.

10          MR. HEYDARI:  Farhang Heydari also for the plaintiff.

11          THE COURT:  Good morning.

12          THE CLERK:  Counsel for defendants.

13          MR. KRAUSE:  Good morning, your Honor.  Andrew Krause

14     for all 15 defendants.

15          MS. NORMAND:  And Sarah Normand, your Honor, also for

16     the defendants.

17          THE COURT:  All right.  Good morning to you, too.

18          Now, this is an initial conference and a premotion

19     conference.

20          Ms. Gertner, would you briefly describe the nature of

21     the claims at this juncture?

22          MS. GERTNER:  I sure will.

23          Your Honor, this is a very straightforward claim

24     notwithstanding the government's letter.  The allegation is

25     that there was a search warrant affidavit in which there was a

F6mdganc

1   material misrepresentation to search.  The search warrant

2   quoted a cooperator named Adondakis as having implicated

3   Mr. Ganek in insider trading, that he both got insider

4   information and that he knew the information was inside

5   information.

6        Fast-forward to a year and a half later.  There is

7   testimony at trial.  At the trial -- Mr. Ganek is never

8   charged, never indicted.  Fast-forward to the trial.  A year

9   and a half later, two witnesses, an FBI agent and a U.S.

10  attorney who was present at the meeting at which Adondakis was

11  debriefed, stated categorically, and testified under oath, that

12  Mr. Adondakis had never implicated Mr. Ganek in insider trading

13  with respect to any company at any time.

14        So it is an unusual situation.  It's not the -- it's

15  not the kind of situation where there is a misrepresentation in

16  a warrant where later on someone says A and then someone says

17  not A.  This is a situation in which there was never a moment

18  when Mr. Adondakis implicated Mr. Ganek in insider trading at

19  all.

20        Significantly, Mr. Adondakis testified at the

21  subsequent trial, as did the Agent Makol, who is the FBI agent,

22  I'm sorry, who testified.

23        So we are alleging Fourth Amendment violation with

24  respect to material misrepresentation in the warrant.  We are

25  alleging a Fifth Amendment violation with respect to due

F6mdganc

1    process, and other claims.

2            The defendants are not just the drafter of the warrant

3    and the individuals who are participating in the meeting at

4    which Adondakis was debriefed, the defendants are supervisors

5    as well as the U.S. Attorney, based on investigation that we

6    did as to the high profile nature of this case, the kinds of

7    information that was released to the public, decisions made

8    about treating this as a search warrant rather than a subpoena,

9    decisions made with respect to leaking information to the Wall

10   Street Journal.  So we allege it's not just the individual who

11   signed the warrant, which was a material misrepresentation,

12   it's not just those who were present at the meeting with

13   Adondakis, but, in fact, there were supervisors who were

14   intimately involved in the decisions that were made up the

15   line.  And that's really the core of the case and that's the

16   basis for the suit.

17           THE COURT:  All right.  Thank you, Ms. Gertner.

18           Now, Mr. Krause, the government has submitted a

19   premotion letter seeking to move to dismiss.  Does the

20   government first intend to move with respect to all of the

21   defendants?

22           MR. KRAUSE:  Yes, we do, your Honor, and we intend to

23   move on behalf of all 15 defendants.

24           THE COURT:  And, briefly, do you want to be heard with

25   respect to that proposed motion?  In your letter, you said that

F6mdganc

1    there would be some other arguments that you would be advancing

2    with respect to the plaintiff's due process claim.  I would

3    like you to at least elaborate on that a little, if you can.

4          MR. KRAUSE:  Yes, your Honor.  We are still in the

5    process of researching and developing those arguments, but with

6    respect to the Fifth Amendment arguments, we do believe that in

7    significant part they collapse into the Fourth Amendment

8    arguments in that they are predicated on this notion of

9    fabrication of evidence, which we believe is inadequately pled

10   for a variety of reasons, as we set forth in the letter.  Among

11   those reasons, as we've discussed in the letter, is that the

12   evidence proffered in the complaint as a basis for the

13   purported fabrication all relates to testimony that was given

14   just -- I believe Ms. Gertner may have inadvertently misspoken.

15   No A.U.S.A. has testified at the trial.

16          MS. GERTNER:  Right.

17          MR. KRAUSE:  But Mr. Adondakis and Agent Makol, they

18   testified with respect to alleged misrepresentations with

19   respect to a particular stock, Dell Incorporated, which was a

20   major source of discussion at the trial in question.  But the

21   search warrant affidavit doesn't refer to specific information

22   being provided to Mr. Ganek about Dell; it refers to inside

23   information more generally.  That's plain on the face of the

24   warrant.

25          So, your Honor, that's essentially our position with

F6mdganc

1    respect to the Fifth Amendment claim.  There is no due process

2    violation if there is no fabrication of evidence underlying the

3    process that was performed to obtain the search warrant.  It

4    was a standard search warrant application.  The affidavit was

5    reviewed and accepted.  And absent any impropriety with respect

6    to the warrant, we believe there is no due process violation at

7    all.

8         THE COURT:  Don't some of those issues just turn on

9    the facts, though?

10        MR. KRAUSE:  Your Honor, we believe that, in fact,

11   based on the documents that are relied upon in great detail in

12   the complaint -- the warrant affidavit itself, the testimony

13   that is cited, additional testimony from Agent Makol -- make

14   clear that there are contemporaneous notes of the

15   November 2nd meeting in question at which the agent who took

16   those notes clearly wrote that Mr. Ganek had this information,

17   that the allegation is that he purportedly did not have.  We

18   believe that both from the perspective of a failure to state a

19   claim and from a qualified immunity perspective, that

20   information alone makes clear that reasonable agents could have

21   differed with respect to the understanding of what was and was

22   not said at that meeting, that that renders the allegations in

23   the complaint implausible, because those notes which are

24   discussed and the testimony which is expressly relied upon in

25   the complaint provide a reasonable alternative explanation to

F6mdganc

1    the alleged fabrication.

2              THE COURT:  But doesn't that turn directly on the

3    credibility of the affiant and those who testified at the

4    trial?

5              MR. KRAUSE:  Your Honor, we believe that even if you

6    accept as true all of the allegations, including the testimony

7    at the trial, the complaint doesn't address this issue with

8    respect to the notes at all, which, again, is made clear in the

9    same testimony from the same witness, the same defendant, that

10   is relied upon in the complaint.

11             THE COURT:  Right.  But the note taker was only

12   purportedly taking down what he or she heard Adondakis say.

13   Didn't Adondakis deny ever saying it?

14             MR. KRAUSE:  I think there may be some -- there may be

15   some confusion as to which --

16             THE COURT:  Well, "confusion" is a word the government

17   has used both at trial and in submissions, haven't you?

18             MR. KRAUSE:  I'm sorry, your Honor.  I'm not sure I

19   understand the question.

20             THE COURT:  Hasn't the government used the word

21   "confusion" to describe what was in the affidavit?

22             MR. KRAUSE:  I believe that that is a word that Agent

23   Makol may have used during his testimony.  But, your Honor, we

24   believe that that does provide a basis for a qualified immunity

25   argument, that there was a reasonable officer who understood

F6mdganc

1    what was said in one particular way and perhaps there was a

2    reasonable office who understood it in a different way.

3              THE COURT:  Now, what about discovery in this case

4    during pendency of the motion?  I guess, first, when are you

5    prepared to file your motion?

6              MR. KRAUSE:  Your Honor, given some scheduling issues

7    for both myself and Ms. Norman and the need to consult with all

8    15 of our clients, we would like six weeks in order to be able

9    to file the motion.

10             THE COURT:  All right.  You know, the plaintiffs, in

11   seeking to conduct some discovery, argue that certain discovery

12   inevitable.  I think that's the word, Ms. Gertner, that's used

13   in the 26(f).  What discovery is inevitable in this case?

14             MS. GERTNER:  Are you asking me?

15             THE COURT:  Yes, or any of your colleagues.

16             MS. GERTNER:  Well, at the very minimum, the 302,

17   which are the notes or the embodiment of the notes that counsel

18   is referring to, was referred to in the subsequent trial of

19   Mr. Chiasson and Mr. Newman, we would like that as part of -- I

20   won't label that discovery; I would label that as part of the

21   initial disclosures, the 302s.  And then there would be any

22   supporting notes, as well, to the 302s.  Because, as I said,

23   the platform that this case is built on is what was said in the

24   affidavit, what was said in the 302 and the supporting notes

25   and what was said at the trial.

F6mdganc

1              So that's actually minimal.  I believe we would want

2        more broadly, but I can defer to Ms. Hoffmann

3              MS. HOFFMANN:  I mean, presumably, document discovery,

4        as Ms. Gertner was saying, we don't think that there is any

5        basis to dismiss against -- certainly against the core

6        defendants because all the defendants are doing is really

7        fighting against the factual allegations in our complaint, and

8        that obviously can't happen at a motion to dismiss stage.

9        Assuming that discovery is going to go forward at least against

10        those defendants, initial document disclosures, things that

11        could be made at this early stage.  So certainly the 302 and

12        the underlying notes, potentially other documents that were

13        disclosed to the criminal counsel in the Chiasson and Newman

14        case for which there couldn't possibly be any claim of

15        privilege, those kinds of documents, those sort of

16        uncontroversial document disclosures could go forward at this

17        early stage.

18              MS. GERTNER:  I just want to add one thing.  We

19        understand that the government is filing this letter and, we

20        believe, without having talked to all 15 defendants and, in

21        part, because of the conflict issue that that raises, so that

22        creates an ambiguity to the representations being made here.  I

23        just want to note that for the record.

24              THE COURT:  Well, I don't know how you could know

25        whether the Assistant U.S. Attorneys on the case have conferred

F6mdganc

1    with each of their 15 clients.

2          MS. GERTNER:  It is a representation they made to us,

3    your Honor.

4          MR. KRAUSE:  Your Honor, if I may just correct the

5    record on that a little bit?  It is a representation that we

6    made in early discussions with counsel prior to our having

7    authority to represent those individuals defendants.

8          So there came a point in time when the Department of

9    Justice, through its administrative process, approved the

10   representation request that had been made by the 15 individual

11   defendants.  Prior to that time, we did have discussions with

12   plaintiff's counsel about various matters and we did make that

13   representation, which was true at that time.

14         But we have represented those defendants now for

15   approximately a month, maybe a little bit more than that, and

16   so I don't want to get into the discussions we had and haven't

17   had with our clients but I think that there is just perhaps a

18   timing disconnect there.

19         THE COURT:  But is there the possibility that there is

20   going to be a conflict looming if this case proceeds beyond the

21   motion to dismiss?

22         MR. KRAUSE:  Your Honor, at this time we have no basis

23   to believe that there is a material conflict with respect to

24   our representation of the defendants.  Of course, if during the

25   course of that representation we learn of any potential

F6mdganc

1    conflict, we would immediately, in accordance with our own

2    ethical responsibilities and the Department's guidelines with

3    respect to representation of individual defendants, take the

4    appropriate steps.

5            MR. BRUSTIN:  Your Honor, the reason we didn't raise

6    the conflict issue at this point is because it was our

7    understanding that they hadn't spoken to individual defendants,

8    that they were simply making -- trying to be making motions on

9    procedural and legal grounds.  Now that we understand they may

10   have spoken to the defendants, we may have to raise the

11   conflict issue, because we think there are many conflicts that

12   could arise here.  The allegations we're raising raise both

13   potentially criminal conduct as well as ethical conduct for the

14   attorneys.  There is no question that some may not be

15   indemnified.  There is putative damages.  There are a host of

16   conflicts that will arise here that eventually we believe the

17   Court will have to deal with, and we believe it is our

18   obligation under Dunton to raise them with the Court to protect

19   any verdict that we obtain.

20           THE COURT:  All right.  The question, though is they

21   may loom a little later in this litigation, assuming that for

22   the moment that the government's not successful with respect to

23   all of the defendants on its motion to dismiss, and the

24   question at the moment is whether there is a conflict inherent

25   now on a motion directed at qualified immunity.  That's why I'm

F6mdganc

1  raising it.

2          MR. BRUSTIN:  Our concern -- and we hadn't thought

3  this through because we didn't realize this was happening -- is

4  that one group of lawyers from the government is speaking to

5  all the defendants substantively about the case.  That could be

6  a problem going forward.  And we haven't thought that through,

7  but we would like to do the research and think about it,

8  because we don't want to do anything to jeopardize our rights

9  going forward.  And so we have an obligation to raise the

10  conflict as soon as we see it.

11          Our understanding was they weren't speaking to them

12  substantively about the case.  Now it sounds differently.

13          THE COURT:  Mr. Krause.

14          MR. KRAUSE:  Your Honor, if I may?  The Department of

15  Justice has a process for evaluating and in this case approving

16  representation requests, including in cases involving multiple

17  defendants.  It's something that happens with some regularity.

18          In this case all 15 individual defendants have the

19  option to seek representation through the Department of

20  Justice.  It was not forced upon them in any way.  It was not

21  mandated in any way.  Many -- in fact, a significant number of

22  these individual defendants -- are former employees.  And the

23  Department of Justice reviewed those applications, considered

24  the various issues that needed to be considered, and approved

25  the representation requests.

F6mdganc

1          Of course, Ms. Normand and I are both aware of the

2    potential for conflict, as we would be in any case involving

3    multiple representations of individual defendants, and to the

4    extent those issues require further consultation internally

5    within our office or with the Court, we would certainly raise

6    those issues promptly.

7          THE COURT:  All right.  Well, obviously there's a lot

8    of well settled case law in this circuit, starting with Dunton,

9    about potential conflicts and the need for counsel to represent

10   divergent interests.  Even when a government in that case -- I

11   think it was Suffolk County -- decided to provide

12   representation, they had an obligation to provide conflict-free

13   representation.  And that may well be an issue that needs to be

14   vetted early on in the case.  I mean, I'm going to fix a motion

15   schedule.

16          But getting back, I guess, to the question of

17   discovery pending this motion.  First, for the plaintiff, what

18   prejudice is there to Mr. Ganek if the Court were to stay

19   discovery while the motion to dismiss is pending?

20          MS. GERTNER:  I know that question well, your Honor.

21   The only answer that we have is that the case will proceed

22   against someone -- the drafter of the false affidavit, those

23   who knew of it -- and the discovery that we request -- and

24   without waiving our other issues, so it's only a question of

25   when we get the discovery.  The delay is the delay in

F6mdganc

1    litigating this case.  I can't say there is anything more

2    substantial than that.

3              But, likewise, there's no burden on the government

4    because it will proceed against someone, and the information

5    we're requesting is not information they have to cull or

6    manage, it is information already out there.  And at the very

7    minimum, it seems to me that that's information that they

8    should provide.

9              MR. KRAUSE:  Your Honor, of course we strenuously

10   disagree that the case will definitely proceed against anybody,

11   and that is the basis of our resistance to proceeding with any

12   discovery at this point.  However, if there are specific

13   documents on which the complaint appears to explicitly rely, we

14   can provide those documents to plaintiff's counsel.  I believe

15   they have those documents already through whatever means.  But

16   to the extent there are specific documents that are addressed

17   in the complaint directly, we can provide those documents, to

18   the extent that they don't have any of those.

19             THE COURT:  What about the 302s relating to the

20   meetings, in particular, I guess the November 2 meeting with

21   Mr. Adondakis?

22             MR. KRAUSE:  Right.  In this case it must be a 1023,

23   but it is the same basic idea.  Your Honor, I can't represent

24   at this point whether or not there might be issues of privilege

25   or other concerns with respect to those documents.  It's

F6mdganc

1    something we can take under advisement and consider.

2            I know for a fact that there is a protective order in

3    place in the criminal case which is still, I believe, effective

4    and would cover all of the material that was provided to

5    defense counsel in that matter.  It may be that it terminated

6    upon conclusion of the criminal case.  I haven't looked at the

7    protective order in a little while, but that's something we

8    would certainly have to go back to at a threshold level before

9    we also consider whatever other potential privileges there

10   might, whether there might be other ongoing investigations that

11   are addressed in those documents.  That's just something we

12   have to think through.

13           THE COURT:  Well, wasn't there an application either

14   just before or at the time this case was filed to the Part I

15   judge to unseal the affidavit in support of the search warrant,

16   and wasn't that granted?

17           MR. KRAUSE:  The affidavit itself, yes, and it was

18   granted with redactions.  The government had proposed certain

19   redactions to those documents.  That was handled by our

20   colleagues in the Criminal Division, and the application was

21   unsealed but with redactions precisely because of some of these

22   concerns, I believe.

23           THE COURT:  All right.  Well, I think that at least

24   during the pendency of this motion, that you should confer with

25   your colleagues in the Criminal Division and determine whether

F6mdganc

1       the 302s can be provided to plaintiff's counsel.  I would be

2       certainly inclined, without having the issue fully presented

3       yet to me, to think that there is not any real good argument

4       why the plaintiffs shouldn't have those materials.

5              It seems to me that there could be some initial

6       disclosures made along those narrow kinds of lines that I'm

7       going to leave for counsel to have a separate discussion and

8       negotiation about, and if you can't reach an agreement, you can

9       submit a letter application to me.  But, you know, the notion

10      with respect to qualified immunity that -- and I don't by this

11      mean to suggest that I'm accepting plaintiff's argument that

12      there's going to be somebody in the case, but even so,

13      qualified immunity is aimed at protecting defendants who

14      otherwise are not going to be part of the case from having to

15      in any way defend the case or provide discovery in the case or

16      participate in proceedings in the case, and I simply want

17      everyone to remain mindful of that.

18             And so I'm prepared to tee up this motion.  At the

19      same time, if counsel believe that there's a conflict issue

20      that needs to be vetted, you can submit something to me on your

21      own schedule; I'm not going to schedule that.

22             But, Mr. Krause, you requested approximately 60 days?

23             MR. KRAUSE:  I requested six weeks, your Honor.

24             THE COURT:  Six weeks?

25             MR. KRAUSE:  But we certainly will take 60 days, if

F6mdganc

1   your Honor doesn't mind.

2           THE COURT:  How about August 5?

3           MR. KRAUSE:  Thank you, your Honor.

4           THE COURT:  All right.  How much time would the

5   plaintiffs like to oppose the motion?

6           MS. HOFFMANN:  I think, given our vacation and other

7   work schedules, we would request eight weeks, so towards the

8   end of September.

9           THE COURT:  All right.  What I'm going to do,

10  Mr. Krause, take until August 14th.  All right?

11          MR. KRAUSE:  Thank you, your Honor.

12          THE COURT:  And how about October 7 for opposition?

13          MS. HOFFMANN:  That is fine.  Thank you.

14          THE COURT:  How much time would you like for reply?

15          MR. KRAUSE:  Your Honor, if I may respectfully request

16  30 days?  I know that is a long time for a reply, but I expect

17  to be on paternity leave on August 7th.  So we if we could just

18  have a little bit of extra leeway so that I might get back and

19  continue to work on the reply, I would appreciate it.

20          THE COURT:  November 4 for reply.

21          MR. KRAUSE:  Thank you very much, your Honor.

22          THE COURT:  And I'm going to put the case down for an

23  oral argument on November 20th at 11 o'clock.

24          Is there anything further the parties would like to

25  raise this morning?

F6mdganc

1          MS. GERTNER:  No, your Honor.

2          MR. KRAUSE:  Your Honor, there is one thing that

3    occurs to me with the briefing.  Especially given the number of

4    defendants, I expect that we would need more than 25 pages.  If

5    we could have 40 pages in our opening brief?

6          THE COURT:  All right, but take the time to try to

7    make it shorter.

8          MR. KRAUSE:  We'll do our very best, your Honor.

9          THE COURT:  All right.  What about -- I assume the

10   plaintiffs want to invoke the goose/gander rule, so I'll allow

11   it.  There are some fascinating issues here.  But take the time

12   to make it shorter.

13         MR. KRAUSE:  Understood.

14         THE COURT:  All right.  And no more than 15 pages on

15   reply.

16         All right.  Thank you very much.

17         MS. GERTNER:  Thank you.

18         MR. BRUSTIN:  Thank you, your Honor.

19         MR. KRAUSE:  Thank you, your Honor.

20         THE COURT:  Have a good afternoon.

21         THE CLERK:  All rise.

22

23                                  -  -  -

24

25