F6mdganc

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

DAVID GANEK,

                Plaintiff,              New York, N.Y.

        v.                              15 Civ. 1446 (WHP)

DAVID LEIBOWITZ,

                Defendant.

------------------------------x
                                        June 22, 2015
                                        11:03 a.m.
Before:

                HON. WILLIAM H. PAULEY III,

                                        District Judge

                        APPEARANCES

NEUFELD SCHECK & BRUSTIN, LLP
     Attorneys for Plaintiff
BY:  NANCY GERTNER
     ANNA BENVENUTTI HOFFMANN
     NICK J. BRUSTIN
     BARRY SCHECK
     FARHANG HEYDARI

PREET BHARARA
     United States Attorney for the
     Southern District of New York
     Attorney for defendants
BY:  ANDREW E. KRAUSE
     SARAH SHEIVE NORMAND
         Assistant United States Attorneys
```

F6mdganc

1        THE CLERK:  Matter on for initial conference and
2   premotion conference, Ganek v. Leibowitz.
3        Will counsel for the plaintiff please state their
4   appearances for the record.
5        MS. GERTNER:  Nancy Gertner for David Ganek.
6        MS. HOFFMANN:  Anna Benvenutti Hoffmann also for
7   plaintiff David Ganek.
8        MR. BRUSTIN:  Nick Brustin also for plaintiff Ganek.
9        MR. SCHECK:  Barry Scheck for David Ganek.
10       MR. HEYDARI:  Farhang Heydari also for the plaintiff.
11       THE COURT:  Good morning.
12       THE CLERK:  Counsel for defendants.
13       MR. KRAUSE:  Good morning, your Honor.  Andrew Krause
14  for all 15 defendants.
15       MS. NORMAND:  And Sarah Normand, your Honor, also for
16  the defendants.
17       THE COURT:  All right.  Good morning to you, too.
18       Now, this is an initial conference and a premotion
19  conference.
20       Ms. Gertner, would you briefly describe the nature of
21  the claims at this juncture?
22       MS. GERTNER:  I sure will.
23       Your Honor, this is a very straightforward claim
24  notwithstanding the government's letter.  The allegation is
25  that there was a search warrant affidavit in which there was a

material misrepresentation to search.  The search warrant quoted a cooperator named Adondakis as having implicated Mr. Ganek in insider trading, that he both got insider information and that he knew the information was inside information.

        Fast-forward to a year and a half later.  There is testimony at trial.  At the trial -- Mr. Ganek is never charged, never indicted.  Fast-forward to the trial.  A year and a half later, two witnesses, an FBI agent and a U.S. attorney who was present at the meeting at which Adondakis was debriefed, stated categorically, and testified under oath, that Mr. Adondakis had never implicated Mr. Ganek in insider trading with respect to any company at any time.

        So it is an unusual situation.  It's not the -- it's not the kind of situation where there is a misrepresentation in a warrant where later on someone says A and then someone says not A.  This is a situation in which there was never a moment when Mr. Adondakis implicated Mr. Ganek in insider trading at all.

        Significantly, Mr. Adondakis testified at the subsequent trial, as did the Agent Makol, who is the FBI agent, I'm sorry, who testified.

        So we are alleging Fourth Amendment violation with respect to material misrepresentation in the warrant.  We are alleging a Fifth Amendment violation with respect to due

1    process, and other claims.
2             The defendants are not just the drafter of the warrant
3    and the individuals who are participating in the meeting at
4    which Adondakis was debriefed, the defendants are supervisors
5    as well as the U.S. Attorney, based on investigation that we
6    did as to the high profile nature of this case, the kinds of
7    information that was released to the public, decisions made
8    about treating this as a search warrant rather than a subpoena,
9    decisions made with respect to leaking information to the Wall
10   Street Journal.  So we allege it's not just the individual who
11   signed the warrant, which was a material misrepresentation,
12   it's not just those who were present at the meeting with
13   Adondakis, but, in fact, there were supervisors who were
14   intimately involved in the decisions that were made up the
15   line.  And that's really the core of the case and that's the
16   basis for the suit.
17            THE COURT:  All right.  Thank you, Ms. Gertner.
18            Now, Mr. Krause, the government has submitted a
19   premotion letter seeking to move to dismiss.  Does the
20   government first intend to move with respect to all of the
21   defendants?
22            MR. KRAUSE:  Yes, we do, your Honor, and we intend to
23   move on behalf of all 15 defendants.
24            THE COURT:  And, briefly, do you want to be heard with
25   respect to that proposed motion?  In your letter, you said that

1   there would be some other arguments that you would be advancing
2   with respect to the plaintiff's due process claim.  I would
3   like you to at least elaborate on that a little, if you can.
4              MR. KRAUSE:  Yes, your Honor.  We are still in the
5   process of researching and developing those arguments, but with
6   respect to the Fifth Amendment arguments, we do believe that in
7   significant part they collapse into the Fourth Amendment
8   arguments in that they are predicated on this notion of
9   fabrication of evidence, which we believe is inadequately pled
10  for a variety of reasons, as we set forth in the letter.  Among
11  those reasons, as we've discussed in the letter, is that the
12  evidence proffered in the complaint as a basis for the
13  purported fabrication all relates to testimony that was given
14  just -- I believe Ms. Gertner may have inadvertently misspoken.
15  No A.U.S.A. has testified at the trial.
16             MS. GERTNER:  Right.
17             MR. KRAUSE:  But Mr. Adondakis and Agent Makol, they
18  testified with respect to alleged misrepresentations with
19  respect to a particular stock, Dell Incorporated, which was a
20  major source of discussion at the trial in question.  But the
21  search warrant affidavit doesn't refer to specific information
22  being provided to Mr. Ganek about Dell; it refers to inside
23  information more generally.  That's plain on the face of the
24  warrant.
25             So, your Honor, that's essentially our position with

1    respect to the Fifth Amendment claim.  There is no due process
2    violation if there is no fabrication of evidence underlying the
3    process that was performed to obtain the search warrant.  It
4    was a standard search warrant application.  The affidavit was
5    reviewed and accepted.  And absent any impropriety with respect
6    to the warrant, we believe there is no due process violation at
7    all.
8              THE COURT:  Don't some of those issues just turn on
9    the facts, though?
10             MR. KRAUSE:  Your Honor, we believe that, in fact,
11   based on the documents that are relied upon in great detail in
12   the complaint -- the warrant affidavit itself, the testimony
13   that is cited, additional testimony from Agent Makol -- make
14   clear that there are contemporaneous notes of the
15   November 2nd meeting in question at which the agent who took
16   those notes clearly wrote that Mr. Ganek had this information,
17   that the allegation is that he purportedly did not have.  We
18   believe that both from the perspective of a failure to state a
19   claim and from a qualified immunity perspective, that
20   information alone makes clear that reasonable agents could have
21   differed with respect to the understanding of what was and was
22   not said at that meeting, that that renders the allegations in
23   the complaint implausible, because those notes which are
24   discussed and the testimony which is expressly relied upon in
25   the complaint provide a reasonable alternative explanation to

1  the alleged fabrication.
2           THE COURT:  But doesn't that turn directly on the
3  credibility of the affiant and those who testified at the
4  trial?
5           MR. KRAUSE:  Your Honor, we believe that even if you
6  accept as true all of the allegations, including the testimony
7  at the trial, the complaint doesn't address this issue with
8  respect to the notes at all, which, again, is made clear in the
9  same testimony from the same witness, the same defendant, that
10 is relied upon in the complaint.
11          THE COURT:  Right.  But the note taker was only
12 purportedly taking down what he or she heard Adondakis say.
13 Didn't Adondakis deny ever saying it?
14          MR. KRAUSE:  I think there may be some -- there may be
15 some confusion as to which --
16          THE COURT:  Well, "confusion" is a word the government
17 has used both at trial and in submissions, haven't you?
18          MR. KRAUSE:  I'm sorry, your Honor.  I'm not sure I
19 understand the question.
20          THE COURT:  Hasn't the government used the word
21 "confusion" to describe what was in the affidavit?
22          MR. KRAUSE:  I believe that that is a word that Agent
23 Makol may have used during his testimony.  But, your Honor, we
24 believe that that does provide a basis for a qualified immunity
25 argument, that there was a reasonable officer who understood

1    what was said in one particular way and perhaps there was a
2    reasonable office who understood it in a different way.
3            THE COURT:  Now, what about discovery in this case
4    during pendency of the motion?  I guess, first, when are you
5    prepared to file your motion?
6            MR. KRAUSE:  Your Honor, given some scheduling issues
7    for both myself and Ms. Norman and the need to consult with all
8    15 of our clients, we would like six weeks in order to be able
9    to file the motion.
10           THE COURT:  All right.  You know, the plaintiffs, in
11   seeking to conduct some discovery, argue that certain discovery
12   inevitable.  I think that's the word, Ms. Gertner, that's used
13   in the 26(f).  What discovery is inevitable in this case?
14           MS. GERTNER:  Are you asking me?
15           THE COURT:  Yes, or any of your colleagues.
16           MS. GERTNER:  Well, at the very minimum, the 302,
17   which are the notes or the embodiment of the notes that counsel
18   is referring to, was referred to in the subsequent trial of
19   Mr. Chiasson and Mr. Newman, we would like that as part of -- I
20   won't label that discovery; I would label that as part of the
21   initial disclosures, the 302s.  And then there would be any
22   supporting notes, as well, to the 302s.  Because, as I said,
23   the platform that this case is built on is what was said in the
24   affidavit, what was said in the 302 and the supporting notes
25   and what was said at the trial.

1          So that's actually minimal.  I believe we would want
2   more broadly, but I can defer to Ms. Hoffmann
3          MS. HOFFMANN:  I mean, presumably, document discovery,
4   as Ms. Gertner was saying, we don't think that there is any
5   basis to dismiss against -- certainly against the core
6   defendants because all the defendants are doing is really
7   fighting against the factual allegations in our complaint, and
8   that obviously can't happen at a motion to dismiss stage.
9   Assuming that discovery is going to go forward at least against
10  those defendants, initial document disclosures, things that
11  could be made at this early stage.  So certainly the 302 and
12  the underlying notes, potentially other documents that were
13  disclosed to the criminal counsel in the Chiasson and Newman
14  case for which there couldn't possibly be any claim of
15  privilege, those kinds of documents, those sort of
16  uncontroversial document disclosures could go forward at this
17  early stage.
18         MS. GERTNER:  I just want to add one thing.  We
19  understand that the government is filing this letter and, we
20  believe, without having talked to all 15 defendants and, in
21  part, because of the conflict issue that that raises, so that
22  creates an ambiguity to the representations being made here.  I
23  just want to note that for the record.
24         THE COURT:  Well, I don't know how you could know
25  whether the Assistant U.S. Attorneys on the case have conferred

1   with each of their 15 clients.

2             MS. GERTNER:  It is a representation they made to us,
3   your Honor.

4             MR. KRAUSE:  Your Honor, if I may just correct the
5   record on that a little bit?  It is a representation that we
6   made in early discussions with counsel prior to our having
7   authority to represent those individuals defendants.

8             So there came a point in time when the Department of
9   Justice, through its administrative process, approved the
10  representation request that had been made by the 15 individual
11  defendants.  Prior to that time, we did have discussions with
12  plaintiff's counsel about various matters and we did make that
13  representation, which was true at that time.

14            But we have represented those defendants now for
15  approximately a month, maybe a little bit more than that, and
16  so I don't want to get into the discussions we had and haven't
17  had with our clients but I think that there is just perhaps a
18  timing disconnect there.

19            THE COURT:  But is there the possibility that there is
20  going to be a conflict looming if this case proceeds beyond the
21  motion to dismiss?

22            MR. KRAUSE:  Your Honor, at this time we have no basis
23  to believe that there is a material conflict with respect to
24  our representation of the defendants.  Of course, if during the
25  course of that representation we learn of any potential

F6mdganc

     1    conflict, we would immediately, in accordance with our own

     2    ethical responsibilities and the Department's guidelines with

     3    respect to representation of individual defendants, take the

     4    appropriate steps.

     5            MR. BRUSTIN:  Your Honor, the reason we didn't raise

     6    the conflict issue at this point is because it was our

     7    understanding that they hadn't spoken to individual defendants,

     8    that they were simply making -- trying to be making motions on

     9    procedural and legal grounds.  Now that we understand they may

    10    have spoken to the defendants, we may have to raise the

    11    conflict issue, because we think there are many conflicts that

    12    could arise here.  The allegations we're raising raise both

    13    potentially criminal conduct as well as ethical conduct for the

    14    attorneys.  There is no question that some may not be

    15    indemnified.  There is putative damages.  There are a host of

    16    conflicts that will arise here that eventually we believe the

    17    Court will have to deal with, and we believe it is our

    18    obligation under <u>Dunton</u> to raise them with the Court to protect

    19    any verdict that we obtain.

    20            THE COURT:  All right.  The question, though is they

    21    may loom a little later in this litigation, assuming that for

    22    the moment that the government's not successful with respect to

    23    all of the defendants on its motion to dismiss, and the

    24    question at the moment is whether there is a conflict inherent

    25    now on a motion directed at qualified immunity.  That's why I'm

1     raising it.

2                MR. BRUSTIN:  Our concern -- and we hadn't thought

3     this through because we didn't realize this was happening -- is

4     that one group of lawyers from the government is speaking to

5     all the defendants substantively about the case.  That could be

6     a problem going forward.  And we haven't thought that through,

7     but we would like to do the research and think about it,

8     because we don't want to do anything to jeopardize our rights

9     going forward.  And so we have an obligation to raise the

10    conflict as soon as we see it.

11               Our understanding was they weren't speaking to them

12    substantively about the case.  Now it sounds differently.

13               THE COURT:  Mr. Krause.

14               MR. KRAUSE:  Your Honor, if I may?  The Department of

15    Justice has a process for evaluating and in this case approving

16    representation requests, including in cases involving multiple

17    defendants.  It's something that happens with some regularity.

18               In this case all 15 individual defendants have the

19    option to seek representation through the Department of

20    Justice.  It was not forced upon them in any way.  It was not

21    mandated in any way.  Many -- in fact, a significant number of

22    these individual defendants -- are former employees.  And the

23    Department of Justice reviewed those applications, considered

24    the various issues that needed to be considered, and approved

25    the representation requests.

1                  Of course, Ms. Normand and I are both aware of the
2     potential for conflict, as we would be in any case involving
3     multiple representations of individual defendants, and to the
4     extent those issues require further consultation internally
5     within our office or with the Court, we would certainly raise
6     those issues promptly.
7                  THE COURT:  All right.  Well, obviously there's a lot
8     of well settled case law in this circuit, starting with Dunton,
9     about potential conflicts and the need for counsel to represent
10    divergent interests.  Even when a government in that case -- I
11    think it was Suffolk County -- decided to provide
12    representation, they had an obligation to provide conflict-free
13    representation.  And that may well be an issue that needs to be
14    vetted early on in the case.  I mean, I'm going to fix a motion
15    schedule.
16                 But getting back, I guess, to the question of
17    discovery pending this motion.  First, for the plaintiff, what
18    prejudice is there to Mr. Ganek if the Court were to stay
19    discovery while the motion to dismiss is pending?
20                 MS. GERTNER:  I know that question well, your Honor.
21    The only answer that we have is that the case will proceed
22    against someone -- the drafter of the false affidavit, those
23    who knew of it -- and the discovery that we request -- and
24    without waiving our other issues, so it's only a question of
25    when we get the discovery.  The delay is the delay in

1  litigating this case.  I can't say there is anything more
2  substantial than that.
3          But, likewise, there's no burden on the government
4  because it will proceed against someone, and the information
5  we're requesting is not information they have to cull or
6  manage, it is information already out there.  And at the very
7  minimum, it seems to me that that's information that they
8  should provide.
9          MR. KRAUSE:  Your Honor, of course we strenuously
10 disagree that the case will definitely proceed against anybody,
11 and that is the basis of our resistance to proceeding with any
12 discovery at this point.  However, if there are specific
13 documents on which the complaint appears to explicitly rely, we
14 can provide those documents to plaintiff's counsel.  I believe
15 they have those documents already through whatever means.  But
16 to the extent there are specific documents that are addressed
17 in the complaint directly, we can provide those documents, to
18 the extent that they don't have any of those.
19         THE COURT:  What about the 302s relating to the
20 meetings, in particular, I guess the November 2 meeting with
21 Mr. Adondakis?
22         MR. KRAUSE:  Right.  In this case it must be a 1023,
23 but it is the same basic idea.  Your Honor, I can't represent
24 at this point whether or not there might be issues of privilege
25 or other concerns with respect to those documents.  It's

1     something we can take under advisement and consider.
2             I know for a fact that there is a protective order in
3     place in the criminal case which is still, I believe, effective
4     and would cover all of the material that was provided to
5     defense counsel in that matter.  It may be that it terminated
6     upon conclusion of the criminal case.  I haven't looked at the
7     protective order in a little while, but that's something we
8     would certainly have to go back to at a threshold level before
9     we also consider whatever other potential privileges there
10    might, whether there might be other ongoing investigations that
11    are addressed in those documents.  That's just something we
12    have to think through.
13            THE COURT:  Well, wasn't there an application either
14    just before or at the time this case was filed to the Part I
15    judge to unseal the affidavit in support of the search warrant,
16    and wasn't that granted?
17            MR. KRAUSE:  The affidavit itself, yes, and it was
18    granted with redactions.  The government had proposed certain
19    redactions to those documents.  That was handled by our
20    colleagues in the Criminal Division, and the application was
21    unsealed but with redactions precisely because of some of these
22    concerns, I believe.
23            THE COURT:  All right.  Well, I think that at least
24    during the pendency of this motion, that you should confer with
25    your colleagues in the Criminal Division and determine whether

Case 1:15-cv-01446-WHP   Document 39   Filed 07/21/15   Page 16 of 18    16
F6mdganc

1    the 302s can be provided to plaintiff's counsel.  I would be
2    certainly inclined, without having the issue fully presented
3    yet to me, to think that there is not any real good argument
4    why the plaintiffs shouldn't have those materials.
5        It seems to me that there could be some initial
6    disclosures made along those narrow kinds of lines that I'm
7    going to leave for counsel to have a separate discussion and
8    negotiation about, and if you can't reach an agreement, you can
9    submit a letter application to me.  But, you know, the notion
10   with respect to qualified immunity that -- and I don't by this
11   mean to suggest that I'm accepting plaintiff's argument that
12   there's going to be somebody in the case, but even so,
13   qualified immunity is aimed at protecting defendants who
14   otherwise are not going to be part of the case from having to
15   in any way defend the case or provide discovery in the case or
16   participate in proceedings in the case, and I simply want
17   everyone to remain mindful of that.
18       And so I'm prepared to tee up this motion.  At the
19   same time, if counsel believe that there's a conflict issue
20   that needs to be vetted, you can submit something to me on your
21   own schedule; I'm not going to schedule that.
22       But, Mr. Krause, you requested approximately 60 days?
23       MR. KRAUSE:  I requested six weeks, your Honor.
24       THE COURT:  Six weeks?
25       MR. KRAUSE:  But we certainly will take 60 days, if

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

F6mdganc

1   your Honor doesn't mind.
2           THE COURT:  How about August 5?
3           MR. KRAUSE:  Thank you, your Honor.
4           THE COURT:  All right.  How much time would the
5   plaintiffs like to oppose the motion?
6           MS. HOFFMANN:  I think, given our vacation and other
7   work schedules, we would request eight weeks, so towards the
8   end of September.
9           THE COURT:  All right.  What I'm going to do,
10  Mr. Krause, take until August 14th.  All right?
11          MR. KRAUSE:  Thank you, your Honor.
12          THE COURT:  And how about October 7 for opposition?
13          MS. HOFFMANN:  That is fine.  Thank you.
14          THE COURT:  How much time would you like for reply?
15          MR. KRAUSE:  Your Honor, if I may respectfully request
16  30 days?  I know that is a long time for a reply, but I expect
17  to be on paternity leave on August 7th.  So we if we could just
18  have a little bit of extra leeway so that I might get back and
19  continue to work on the reply, I would appreciate it.
20          THE COURT:  November 4 for reply.
21          MR. KRAUSE:  Thank you very much, your Honor.
22          THE COURT:  And I'm going to put the case down for an
23  oral argument on November 20th at 11 o'clock.
24          Is there anything further the parties would like to
25  raise this morning?

1     MS. GERTNER:  No, your Honor.
2     MR. KRAUSE:  Your Honor, there is one thing that
3  occurs to me with the briefing.  Especially given the number of
4  defendants, I expect that we would need more than 25 pages.  If
5  we could have 40 pages in our opening brief?
6     THE COURT:  All right, but take the time to try to
7  make it shorter.
8     MR. KRAUSE:  We'll do our very best, your Honor.
9     THE COURT:  All right.  What about -- I assume the
10 plaintiffs want to invoke the goose/gander rule, so I'll allow
11 it.  There are some fascinating issues here.  But take the time
12 to make it shorter.
13     MR. KRAUSE:  Understood.
14     THE COURT:  All right.  And no more than 15 pages on
15 reply.
16     All right.  Thank you very much.
17     MS. GERTNER:  Thank you.
18     MR. BRUSTIN:  Thank you, your Honor.
19     MR. KRAUSE:  Thank you, your Honor.
20     THE COURT:  Have a good afternoon.
21     THE CLERK:  All rise.
22
23                              - - -
24
25